LAGESEN, P. J.
*627 While employed as a bookkeeper for two related Eugene companies, petitioner started writing company checks to herself, stealing over $ 1.5 million over the course of six years. One of the companies finally caught on and reported her to police, at which point petitioner quickly confessed and then pleaded guilty to 84 charges of various theft offenses. The trial court sentenced her to 23 years, nine months' incarceration, based in part on its view that petitioner's crime forced one of the companies to go out of business, leaving 85 people without jobs.
Petitioner now seeks post-conviction relief from her sentence and some of her convictions. The primary issues before us are whether petitioner is entitled to relief from some of her convictions on the ground that her trial counsel was inadequate and ineffective for not moving to dismiss the charges as time barred, and whether she is entitled to relief from her sentence on the ground that her trial counsel was inadequate and ineffective for failing to conduct an investigation into the accuracy of the state's contention that petitioner's thefts caused the closure of a company. For the reasons that follow, we reject petitioner's challenge to her convictions, but conclude that, under Richardson v. Belleque , 362 Or. 236, 406 P.3d 1074 (2017), petitioner is entitled to a new sentencing hearing because her lawyer's decision not to investigate the state's claim that petitioner's theft caused one of the companies to fail did not comport with constitutional standards. We therefore reverse and remand with directions to the trial court to grant relief on petitioner's claim regarding the adequacy of trial counsel's sentencing investigation and order a new sentencing proceeding.
I. BACKGROUND
A. Underlying Criminal Proceedings
Petitioner worked for 10 years in the accounts payable department of My Little Salesman. She also did the same type of work for a related company, IP Koke. Over six of those 10 years, from 2003 to 2009, she stole a total of $ 1,563,153.22 from the two companies. She did so by forging 365 checks to herself. Petitioner primarily took money *628 from IP Koke, until it closed and let go all of its employees in November 2008. Petitioner then stole from My Little Salesman until she was fired for incompetence in June 2009. She used the money to gamble and to travel to various casinos, making numerous trips to Las Vegas.
After petitioner was fired, Pierce, one of the owners of both My Little Salesman and IP Koke, discovered the thefts and reported them to the police. Petitioner was arrested and, during a police interview, confessed to taking money from both IP Koke and My Little Salesman. The state then charged petitioner with 88 theft offenses, although it later dismissed the first four counts as barred by the statute of limitations. Petitioner pleaded guilty to the remaining 84 counts, with open sentencing.
*521 At sentencing, the state noted that petitioner's sentencing exposure was 80 to 90 years, but urged the court to sentence her to 285 months-23 years, nine months. The state argued that petitioner's conduct had caused IP Koke to close and its employees to lose their jobs, warranting a long sentence: "It's not a matter of how many checks she wrote. It's a matter of the number of victims that she amassed and the damage that she caused and that she knew she was causing." Pierce and several of the employees who had lost their jobs made statements blaming petitioner's thefts for the company's closure, and the hardships suffered by the former employees as a result.
Petitioner's trial counsel, in response, opted not to dispute that the company's closure was the product of petitioner's thefts. Although counsel knew that that was the position that the state was going to take, and petitioner and her family members had requested that trial counsel investigate the claim that petitioner's conduct was the cause of IP Koke's closure, counsel decided not to look into it at all. Counsel thought that the best strategy was to "beg[ ] for mercy," without suggesting that the company failed for reasons other than petitioner's conduct, and said that he "had not signed up for that job of investigating whether IP went out of business because of mismanagement or petitioner's behavior, or both, and that was why [he] was so firm *629 in refusing to get involved in such a strategy." Consistent with that strategy choice, counsel argued at sentencing that petitioner's thefts were the product of her gambling addiction, that petitioner's prompt confession demonstrated that she had accepted responsibility as best she could, and that the harm that petitioner's addiction had caused to her own family all pointed toward lenient treatment. Counsel also provided the court with information regarding sentences imposed in other business embezzlement cases, all of which were shorter than the sentence advocated by the state. Some of those cases involved thefts of greater amounts of money than that taken by petitioner, and counsel urged the court to conclude that the state's proposed sentence was too long in comparison.
The trial court went with the state's recommendation. In explaining its sentencing choice-and why it was imposing a longer sentence than those imposed in the other business embezzlement cases identified by trial counsel-the court emphasized the extent of the harm caused by petitioner's conduct:
"When [trial counsel] makes that argument in reading through each and every one of those [other cases], I can find distinguishing differences in your case.
"The activity was longer. The money might have been less, but there were far more victims. The harm was far greater here than it was in those cases.
"* * * * *
"And the destruction, although devastating to those victims, if you add up that destruction and this destruction, you are in a different ball park. Okay.
"* * * * *
"And you're a thief, regardless of how you spent the money. And you caused devastation on a magnitude, if you count the companies and 87 victims, that may never recover. And you can't help them recover."
The trial court reasoned further that the fact that petitioner "continue[d] to feed off of" My Little Salesman after IP Koke closed demonstrated that petitioner was *630 "somebody who would do it again." Thus, a 285-month sentence was justified. The court observed that the sentence ultimately represented approximately "six months per victim." The court denied petitioner eligibility for alternative incarceration programs, "given the number of victims and given the devastation that [petitioner] * * * brought on these people." The court ordered petitioner to pay restitution on each count, including the four counts that had been dismissed. Petitioner's trial counsel did not object to the award of restitution with respect to the dismissed counts.
Petitioner appealed-unsuccessfully.
B. Post-Conviction Proceedings
After her appeal failed, petitioner filed this case. She alleged that her trial counsel and appellate counsel were inadequate and ineffective, *522 in violation of her rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, in a number of different ways. As relevant to the issues before us now, petitioner alleged that trial counsel was inadequate and ineffective for (1) not moving to dismiss Counts 5 through 40 as barred by the then-applicable three-year statute of limitations, ORS 131.125(6)(a) (2009), amended by Or. Laws 2012, ch. 70, § 2; (2) not hiring a forensic accountant or otherwise investigating the assertion that petitioner's conduct caused IP Koke to close; and (3) not objecting to the imposition of restitution with respect to the dismissed counts. In support of her claim that trial counsel was inadequate and ineffective for not investigating the harm caused by petitioner's theft, petitioner introduced evidence of newspaper articles about IP Koke's closure that explained the different factors that led to the closure, including changes in the printing industry, declining customer orders, and the poor economy. Petitioner also introduced evidence from an accountant who opined that factors other than petitioner's thefts led to the closure of IP Koke.
The post-conviction court entered a judgment denying relief on all grounds, even though defendant, the superintendent of the Coffee Creek Correctional Facility, conceded that the imposition of restitution on the dismissed counts *631 was in error.[1] Regarding petitioner's claim that trial counsel was inadequate and ineffective for not moving to dismiss Counts 5 through 40 as time barred, the court concluded:
"Petitioner argues that claims 5-40 were outside the statute of limitations and that the trial attorney was inadequate for allowing her to plead to those counts. The original information was amended on Feb. 12, 2010 (Exhibit 6) to charge Theft by Deception which allows the 3 year limitation to be increased to 6 years if the charges have a material element of fraud or breach of fiduciary duty. The charges were therefore within the 6 year limitation and there was no inadequacy in petitioner pleading to those counts."
As to petitioner's claim regarding trial counsel's failure to investigate the role that petitioner's conduct may have played in the closure of IP Koke, the post-conviction court determined:
"Petitioner's claims concerning sentencing revolve largely around not challenging the statement by IP [Koke] management that petitioner caused the company to fail and cost 85 people their jobs.
"Petitioner's family wanted the trial attorney to hire a forensic accountant to prove that the company's failure was not because of petitioner's thefts. Based on the evidence presented here (newspaper articles, report of a forensic accountant), there would certainly have been evidence to support that argument. Trial attorney did not investigate those issues at all. He instead decided that casting blame on the victim company was not in keeping with petitioner throwing herself on the mercy of the court-the strategy he felt was more likely to be successful. He decided that he was simply unwilling to consider the financial analysis issue and made that clear to the petitioner, her family and the court. The court did express its concern that in several ways, the petitioner was not fully accepting responsibility and was blaming others. The attorney's strategy was not successful. Other attorneys may well have chosen to use *632 the accounting information, but this court finds the trial attorney's decision reasonable."
The court concluded further that there was no "prejudice in any aspect of the representation."
On appeal, petitioner assigns error to the post-conviction court's rejection of each of those three claims of trial counsel inadequacy. Consistent with his position below, the superintendent concedes that petitioner is entitled to relief on her claim that trial counsel was inadequate for not objecting to the *523 imposition of restitution with respect to Counts 1 through 4, but contends that the post-conviction court was correct to reject petitioner's other two claims.
II. STANDARD OF REVIEW AND GENERAL LEGAL STANDARDS
We review a post-conviction court's grant or denial of relief for legal error, accepting the court's implicit and explicit factual findings if there is evidence to support them. Green v. Franke , 357 Or. 301, 312, 350 P.3d 188 (2015). At issue in this matter are parallel claims of inadequate assistance of trial counsel under Article I, section 11, and ineffective assistance of trial counsel under the Sixth Amendment. To establish that her trial counsel rendered inadequate assistance for purposes of Article I, section 11, petitioner was required to prove two elements: (1) a performance element-that trial counsel "failed to exercise reasonable professional skill and judgment"; and (2) a prejudice element-that "petitioner suffered prejudice as a result of counsel's inadequacy." Johnson v. Premo , 361 Or. 688, 699, 399 P.3d 431 (2017). A functionally equivalent two-element standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment. Id . To prevail on that claim, petitioner was required to demonstrate that "trial counsel's performance 'fell below an objective standard of reasonableness,' " and also that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Id . at 700, 399 P.3d 431 (quoting Strickland v. Washington , 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ). We examine the challenged rulings of the post-conviction court in light of those standards.
*633 III. ANALYSIS
A. Failure to Challenge Counts 5 through 40 as Time Barred
We start with petitioner's contention that she is entitled to relief on her claim that trial counsel was inadequate and ineffective for not moving to dismiss, or otherwise challenging, Counts 5 through 40 as time barred by the then-applicable three-year statute of limitations. Petitioner acknowledges that ORS 131.125(9)(a),[2] the so-called "fraud extender" statute, extends the applicable limitations period by three years, for offenses involving a "material element of fraud," but contends that, under State v. Ricker , 107 Or. App. 245, 246, 810 P.2d 1356 (1991), the fraud extender statute does not apply to the theft charges. Petitioner asserts that, in view of Ricker , reasonable counsel would have recognized that the fraud extender statute did not apply to the charges against petitioner and, thus, moved to dismiss them as untimely. In Ricker , we concluded that the theft charges at issue in that case did not involve "a material element [of] either fraud or the breach of a fiduciary obligation," as required by the plain terms of ORS 131.125(9)(a),[3] because the state was not required to prove an element of fraud or breach of fiduciary obligation under the statutes that the defendant was charged with violating in order to obtain a conviction. Id .
Here, in contrast to Ricker , Counts 5 through 40 charged petitioner with committing theft by deception , in violation of ORS 164.085. To convict petitioner on those counts as charged, the state was required to prove that petitioner (1) with "intent to defraud," (2) obtained the property *634 of another, by (3) "[c]reat[ing] or confirm[ing] another's false impression of law, value, intention or other state of mind that the actor does not believe to be true." ORS 164.085(1). In other *524 words, the state, in essence, had to prove that petitioner, with the intent to defraud, obtained property through some sort of false pretenses. That is fraud, under any ordinary understanding of the concept. See Webster's Third New Int'l Dictionary 904 (unabridged ed. 2002) (defining fraud, relevantly, as "an intentional misrepresentation, concealment or nondisclosure for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right"); Black's Law Dictionary 775 (10th ed. 2014) (defining fraud, relevantly, as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment"); Murphy v. Allstate Ins. Co. , 251 Or. App. 316, 324, 284 P.3d 524 (2012) (explaining that the elements of common-law fraud are (1) false material misrepresentation by the defendant; (2) the defendant's knowledge that the representation was false; (3) the defendant's intention that the plaintiff rely on the false representation; (4) the plaintiff's justifiable reliance on the false representation; and (5) damage to the plaintiff). Ricker , thus, does not assist petitioner.
The question still remains as to whether theft by deception has a "material element of fraud," for purposes of ORS 131.125(9)(a). The legislature has not defined the phrase. Neither has it cataloged explicitly the offenses that qualify. Under those circumstances, we assume that the legislature intended to use the term "fraud" in its ordinary sense. See State v. Clemente-Perez , 357 Or. 745, 756, 359 P.3d 232 (2015). So understood, theft by deception, as defined by ORS 164.085(1) easily fits into the class of offenses that have a "material element of fraud" for purposes of ORS 131.125 (9)(a). As noted, the elements of the offense track both the dictionary definition of fraud and the elements of common-law fraud.
Consequently, regardless of whether trial counsel reasonably should have moved to dismiss Counts 5 through 40 as untimely, petitioner was not prejudiced by any dereliction in counsel's performance. In view of ORS 131.125(9)(a), *635 any such motion necessarily would have failed and, thus, there is no likelihood that counsel's failure to pursue such a motion tended to affect the outcome of petitioner's criminal case. The post-conviction court correctly rejected petitioner's claim to the contrary.
B. Failure to Investigate the Extent that Petitioner's Conduct Caused IP Koke to Fail
The next question is whether trial counsel was inadequate and ineffective for electing not to investigate the state's contention that petitioner's conduct caused IP Koke to close, thus causing all of its employees to lose their jobs. Under Richardson , we conclude that the answer to that question is yes.
Richardson supplies the framework for analyzing a "failure to investigate" claim like the one asserted by petitioner here. There, as here, the issue was the constitutional adequacy of the petitioner's trial counsel's investigation to support his strategy choice at the petitioner's sentencing. 362 Or. at 258, 406 P.3d 1074. Trial counsel in that case decided not to obtain a psychological evaluation of the petitioner to rebut testimony from the state's expert about the petitioner's personality disorder, and the petitioner alleged that that choice was not grounded in adequate investigation. Id. After canvassing its own case law on "failure to investigate" claims, as well as that of the United States Supreme Court, our Supreme Court agreed with the petitioner. It explained that, under that case law, a competent criminal defense lawyer's decisions regarding what defense theory to pursue must be grounded on a reasonable investigation into the pertinent facts. Id . at 255-57, 262, 406 P.3d 1074. Whether an investigation supporting a particular strategic choice is reasonable turns on "the nature and complexity" of the proceeding at issue in the particular case. Id. at 257, 406 P.3d 1074. And, in that case, "the nature and complexity" of the sentencing proceeding at issue demonstrated that the petitioner's lawyer did not conduct a reasonable investigation before making the call not to obtain a defense expert. Id . at 258, 406 P.3d 1074. That was for several reasons. For one, the stakes of the proceeding were high: The petitioner "was exposed to a markedly enhanced sentence as a dangerous offender." Id. In addition, the petitioner's lawyer *525 was aware that the state *636 intended to rely on its expert at sentencing to testify to the central issue at the sentencing hearing: that the petitioner had "a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of others." Id. at 259, 406 P.3d 1074. Beyond that, trial counsel was aware that the state's expert would rely on the petitioner's juvenile background to diagnose him with that personality disorder. Id . at 258, 406 P.3d 1074. Under those circumstances, the court concluded, a lawyer exercising reasonable professional skill and judgment would have investigated the petitioner's juvenile background himself, and consulted with a defense expert in order to assess how, strategically, to address the testimony of the state's expert. Id . at 262, 406 P.3d 1074.
Turning to the issue of prejudice, the court elaborated on how to assess prejudice in the context of alleging that trial counsel was inadequate for failing to conduct an adequate investigation. Id. at 262-67, 406 P.3d 1074. The court explained that the assessment involves a sequential inquiry into whether "there was 'more than a mere possibility' " that an adequate investigation would have yielded information that could have been used at the sentencing hearing in a way that gave rise to "more than a mere possibility" that the outcome of the proceeding could have been different as a result. Id . at 266-68, 406 P.3d 1074 (quoting Green , 357 Or. at 322-23, 350 P.3d 188 ); see Stephens v. Persson , 291 Or. App. 278, 287-88, 420 P.3d 663 (2018) (acknowledging the sequential prejudice inquiry set forth in Richardson ). Applying that analysis, the court concluded that the petitioner's lawyer's failure to conduct an adequate investigation prejudiced the petitioner because there was more than a mere possibility that the information yielded by that investigation could have been used by trial counsel at sentencing in a way that gave rise to more than a mere possibility that the outcome of that proceeding could have been different. Richardson , 362 Or. at 267-68, 406 P.3d 1074.
Applying that analysis to the facts of this case, we conclude that counsel's failure to investigate the state's claim that petitioner's conduct caused IP Koke to fail was not the product of reasonable professional skill and judgment. The sole issue at sentencing was what sentence was appropriate for petitioner's crimes. The magnitude of the harm caused by petitioner's conduct was, predictably, going *637 to be a significant factor in the court's decision. The success of counsel's own strategic choices about how to approach sentencing-seeking mercy from the court and urging the court to look to sentences in other business embezzlement cases-foreseeably depended on the sentencing court's perception of the magnitude of the harm caused by petitioner's theft of $ 1.5 million. Counsel was aware that the state would claim that that harm was great because petitioner's conduct allegedly resulted in the failure of a business. Counsel also was aware from petitioner and her family that there were reasons to be skeptical of the state's claim about the extent of the harm associated with petitioner's conduct. Yet, counsel failed to look into the issue at all because that is not what he "signed up for" and because of his belief that calling into question the state's assertions regarding the magnitude of harm would conflict with petitioner's plea for mercy. That decision not to conduct even a rudimentary investigation into what counsel knew or reasonably should have known would be a central issue at sentencing does not reflect the exercise of reasonable professional skill and judgment. Without such an investigation, counsel did not have the facts necessary to meaningfully and reasonably evaluate whether questioning the state's assertion about the extent of the harm would, in fact, conflict with petitioner's plea for mercy. In that regard, we observe that the degree of harm caused by the theft of $ 1.5 million is not something that would necessarily be obvious to a trial court, the way that the harm resulting from, for example, a homicide, would be.[4] Under such circumstances, reasonably competent counsel would take steps to investigate and develop an understanding of the *526 extent of harm in order to evaluate how to approach sentencing.
We also conclude that petitioner was prejudiced by counsel's failure to conduct an investigation into whether petitioner's theft caused IP Koke to close. If counsel had conducted even the simplest of investigations by reviewing local newspapers, he would have obtained quite a bit of information tending to attribute IP Koke's closure to other causes, including the fact that its namesake owner had left for a *638 competing company, that the printing industry had undergone substantial changes, that the economy was in decline, and that IP Koke's customer orders had dried up. Had counsel uncovered that information, there is "more than a mere possibility" that counsel could have used that information at sentencing to counter the state's claim that petitioner's conduct alone caused the company's closure by presenting a more complete view of the reasons for the company's closure. There is also "more than a mere possibility" that, presented with that information, the trial court could have taken a different view of the magnitude of the harm caused by petitioner's conduct, perceiving it as but one of several causal factors in the company's closure. Such a view could have persuaded the court to see petitioner's conduct as comparable to the other examples of embezzlement cases that counsel presented to the court, resulting in a shorter sentence for petitioner. At least, there is "more than a mere possibility" that that could have happened.
In sum, under Richardson , trial counsel was inadequate for not investigating the state's claim that petitioner's conduct caused IP Koke to fail, and petitioner was prejudiced as a result. Petitioner is entitled to relief on that claim, and to a new sentencing hearing as a remedy.
C. Failure to Object to Restitution on Counts 1 through 4
Finally, petitioner contends that the post-conviction court erred when it did not grant relief on her claim that trial counsel was inadequate and ineffective for not objecting to the imposition of restitution on Counts 1 through 4, given that those counts had been dismissed. As he did below, the superintendent concedes the point, acknowledging that the post-conviction court appears to have intended to grant relief on that claim. We agree and therefore reverse and remand the judgment insofar as it denied relief on that ground.
IV. CONCLUSION
For the foregoing reasons, petitioner is entitled to relief on her claims that trial counsel was inadequate and ineffective for failing to conduct an investigation into the state's claim that petitioner's conduct caused IP Koke to *639 close, and also on her claim that trial counsel was inadequate and ineffective for not objecting to the imposition of restitution in connection with dismissed Counts 1 through 4. We reverse and remand with directions to the trial court to grant relief as to those claims, and we order a new sentencing hearing.
Reversed and remanded as to denial of relief on (1) claim that trial counsel was inadequate for not investigating whether petitioner's conduct caused IP Koke to close (First Amended Petition, Paragraphs 9(D)(7)(b) and 9(D)(8)(d)) and (2) claim that trial counsel was inadequate for not objecting to imposition of restitution with respect to Counts 1 through 4 (First Amended Petition, Paragraph 9(D)(13)); otherwise affirmed.

The post-conviction court's failure to grant relief on the restitution claim in the judgment it entered appears to have been an oversight. In its written findings and conclusions, the court expressly noted that "[t]he State concedes that the judgment entered mistakenly included restitution for counts 1-4 that were dismissed."

At the time of the underlying criminal proceedings, the fraud extender provisions of ORS 131.125 were contained in ORS 131.125(7)(a) (2009), amended by Or. Laws 2012, ch. 70, § 2. As a result of amendments to the statute in 2012, they are now contained in ORS 131.125(9)(a). Because the amendments did not change the operative wording of the fraud extender provisions, we cite the current statute for ease of reference.

ORS 131.125(9)(a) provides:
"If the offense has as a material element either fraud or the breach of a fiduciary obligation, prosecution may be commenced within one year after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is not a party to the offense, but in no case shall the period of limitation otherwise applicable be extended by more than three years."

As the newspaper articles suggest, some of the causes of a business closure-such as industry changes or market forces-would not necessarily require "blaming" the company or claims of mismanagement.