Submitted February 26, 2019; reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present evidence of petitioner's military service; otherwise affirmed
April 22, 2020

# ADRIAN LESLIE PIKE,
*Petitioner-Appellant,*

*v.*

# Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

## Malheur County Circuit Court
15CV1518; A164666

465 P3d 277

Petitioner, a decorated infantryman in the Army, pleaded guilty to second-degree assault, a Measure 11 offense. At sentencing, his trial counsel attempted to convince the trial court to exercise its authority to downwardly depart from the presumptive 70-month sentence to a term of probation, so that petitioner could continue his military service, but did not present to the court a developed picture of petitioner's military history and the high level of service that he has provided. The court sentenced petitioner to 70 months' incarceration, and, on appeal, the post-conviction court denied relief. Petitioner now appeals that denial, contending that his trial counsel was inadequate and ineffective for, among other things, failing to investigate and present evidence of his service in the military and, relatedly, argue petitioner's status as a servicemember as a mitigating factor when seeking a downward departure from Measure 11 sentencing. *Held*: The post-conviction court erred in denying petitioner relief. Trial counsel's failure to investigate and present evidence of petitioner's military background was not the product of reasonable professional skill and judgment. Further, petitioner was prejudiced by counsel's omission because there was more than a mere possibility that the outcome of the proceeding could have been different had counsel exercised reasonable professional skill and judgment.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present evidence of petitioner's military service; otherwise affirmed.

J. Burdette Pratt, Senior Judge.

Jason Weber and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present evidence of petitioner's military service; otherwise affirmed.

## LAGESEN, P. J.

While on leave, petitioner, a decorated infantryman in the Army, attended the St. Paul Rodeo with a group of friends from his Army unit. He and his friends got drunk and got into a fight with another group of men. In the course of that fight, petitioner cut another man's throat. For that conduct, he pleaded guilty to one count of second-degree assault, a Measure 11 offense. As part of the plea agreement, the state and petitioner agreed that petitioner would be eligible for a downward departure sentence under ORS 137.712 (2015), *amended by* Or Laws 2019, ch 553, § 13, provided that the court found the required "substantial and compelling reasons" to depart. At sentencing, the state argued that such reasons did not exist, while petitioner's trial counsel attempted to convince the court that petitioner's military career was a reason to downwardly depart to a term of probation, so that petitioner could continue his military service. Trial counsel, however, did not present to the court a developed picture of petitioner's military history and the high level of service that he has provided. Counsel also did not point out to the court that OAR 213-008-0002 (1)(a)(J)[1] explicitly recognizes servicemember status as a mitigating factor that can be a substantial and compelling reason for a downward departure. Unpersuaded by counsel's case, the court sentenced petitioner to the presumptive 70 months' incarceration.

Petitioner now seeks post-conviction relief from his sentence. He contends that his trial counsel was inadequate and ineffective for, among other things, failing to investigate and present evidence of his service in the military and, relatedly, argue petitioner's status as a servicemember as a

---

[1] OAR 213-008-0002 (May 20, 2015) has been amended since petitioner's sentencing; all references to that rule in this opinion refer to the version in effect during petitioner's sentencing. Pertinently, OAR 213-008-0002(1) provides:

"[T]he following nonexclusive list of mitigating and aggravating factors may be considered in determining whether substantial and compelling reasons for a departure exist:

"(a) Mitigating factors:

"* * * * *

"(J) The offender's status as a servicemember * * *."

mitigating factor when seeking a downward departure from Measure 11 sentencing.

We conclude that, under *Richardson v. Belleque*, 362 Or 236, 406 P3d 1074 (2017), petitioner is entitled to a new sentencing hearing because his trial counsel's decision not to further develop the evidence of petitioner's military service, and his failure to argue for a downward departure under ORS 137.712 (2015) and OAR 213-008-0002(1)(a)(J) based on petitioner's servicemember status, did not comport with constitutional standards. We therefore reverse and remand with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate and ineffective for failing to investigate and develop further evidence pertaining to petitioner's military service.

## I.  BACKGROUND

### A.  *Underlying Criminal Proceedings*

At the time of the incident leading to petitioner's conviction, he had been an infantryman in the Army for almost four years. Over the course of his service, petitioner served in Afghanistan in a "designated imminent danger pay area" and also received numerous military awards and commendations. Those awards included the following: "Afghanistan Campaign Medal w/ Campaign Star," "Army Commendation Medal," "Army Achievement Medal," "Army Good Conduct Medal," "National Defense Service Medal," "Global War on Terrorism Service Medal," "Army Service Ribbon," "Overseas Service Ribbon," "NATO Medal," "Expert Infantryman Badge," and "Driver and Mechanic Badge w/ Driver-Wheeled Vehicle(s) Clasp." Only a small percentage of servicemembers receive the Expert Infantryman Badge for distinctive service, and petitioner's certificate of discharge—issued after his direct criminal proceedings but before the post-conviction hearing—would later note his "Continuous Honorable Active Service."

As for the incident, petitioner was at the St. Paul Rodeo with some friends from his Army unit when his group got into a fight with another group of men. Accounts of how the fight started vary, but petitioner was very intoxicated

and, in the end, petitioner cut a man's throat with his Army-issued knife. The wound required three stitches.

Petitioner was indicted on one count of assault in the second degree and one count of attempted murder. With the advice of counsel, he entered into a plea agreement under which he pleaded guilty to the assault charge in exchange for the dismissal of the attempted murder charge. Assault in the second degree is a Measure 11 offense with a presumptive sentence of 70 months. As noted, the state and petitioner agreed, as part of the plea deal, that ORS 137.712 (2015) authorized the trial court to downwardly depart from the presumptive sentence if the court found substantial and compelling reasons to do so.

Petitioner's objective at sentencing was to persuade the sentencing court to grant petitioner a downward departure to probation by presenting evidence that petitioner "had a career in the military, that he was doing well there and would continue to do well there, that the military offered structure and required accountability, and that it would best protect society if [petitioner] remained in the military and continued with his treatment." The strategy was to argue that petitioner was engaged in mutual combat when he assaulted the victim and that petitioner was fit for probation because he took responsibility for his actions and, if allowed to remain in the military, could continue to do well and get the help that he needed in the form of anger management classes and an alcohol abuse treatment program. Petitioner and his trial counsel prepared to implement this strategy by having petitioner evaluated for fitness for probation by Correctional Services, Inc., a private business. They also arranged for petitioner's platoon sergeant in the Army to testify on his behalf.

Trial counsel advised petitioner to, during the evaluation, "own" what he had done and his alcohol problem. At the evaluation, petitioner explained, "I was arrested because a fight broke out and two people were stabbed including myself. I pled guilty for assault on the victim that night." When asked what he would change about himself in light of that incident, petitioner responded, "I definitely don't plan to drink like that again. I surround myself with

different people now. That night could have been changed by not being around those people." Petitioner, however, denied having a problem with alcohol, and the evaluator wrote that petitioner "does not see that he needs to change anything about himself in regards to this incident other than changing his friends." The evaluator also noted as areas of concern petitioner's assaultive record (the month before this incident, he had completed probation stemming from a previous fight that he had been in while drunk), his alcohol problem, and the fact that petitioner lived out of state. Despite those concerns, the evaluator concluded, "The outcome that would be the most beneficial for all involved is for [petitioner] to remain in the military and serve his probation under their auspices. He has a higher likelihood of a positive career and chance at a productive life if he continues."

At the sentencing hearing, consistent with petitioner's strategy, trial counsel argued that petitioner should be granted a lighter sentence because he was engaged in mutual combat during the assault and because, afterwards, petitioner was cooperative with the police. He also argued other mitigating factors, specifically, that petitioner had taken responsibility for his actions, that the harm from his actions was less than would typically be expected from a knife wound, and that petitioner was amenable to treatment.

In support of the strategy, counsel introduced evidence of the probation fitness evaluation. Petitioner's sergeant also testified in support of petitioner's case for probation. He stated that petitioner was a "good soldier," who "excelled above his peers," and who, prior to the assault, was up for a promotion to sergeant. He also testified that petitioner's performance continued to be exemplary even after the assault, and that petitioner had completed the Army Substance Abuse Program (ASAP) and would attend anger management classes. He added that the Army intended to keep petitioner if the resolution of the case allowed.

The state argued that there was no mutual combat and that the military was unlikely to help petitioner turn his life around because he was in the military when the incident happened. In support, the prosecutor stated that, directly before the assault, petitioner and his friends were

shouting that the other group should not mess with them because they were "Army rangers." In response, trial counsel showed the court petitioner's enlisted-record brief for the purpose of demonstrating that petitioner was not an Army ranger:

> "[TRIAL COUNSEL]:   I do have, Judge, his military record that I told the State I was going to allow you to see.

> "THE COURT:   Is there anything in particular on this that you want me to look at?

> "[TRIAL COUNSEL]:   He's not a ranger. And when the Court's ready, [petitioner] will want to address.

> "THE COURT:   Certainly. Is there anything in particular that you want me to—do you just want me to read the entire record or—

> "[TRIAL COUNSEL]:   No, Judge. I just wanted to present it to you that he's not a ranger.

> "THE COURT:   Oh, it's just to show that he's not a ranger.

> "[TRIAL COUNSEL]:   He does have a good conduct medal and things like that."

The enlisted-record brief that counsel handed the court included an "Awards and Decorations" section, which indicated that petitioner had earned 10 different commendations. The awards were described using shorthand and abbreviations, and the brief did not reveal what petitioner had done to receive those awards. For example, "Expert Infantryman Badge" read as "EIB," and so on. Trial counsel introduced no additional evidence about petitioner's military service at the hearing and, in particular, did not explain to the trial court that petitioner served in Afghanistan in a "designated imminent danger pay area" or that petitioner had been awarded the commendations described above.

Petitioner also addressed the trial court directly. He explained that he understood that he had a problem with alcohol and that he was not himself during the incident. He added that he planned to continue to make better choices, work on his ASAP program, and enroll in anger management classes. He also apologized to the victim. In

response, the court confirmed that, prior to the sentencing hearing, petitioner had largely blamed the assault on the circumstances and not himself. The court also questioned petitioner on petitioner's mutual combat theory and about a past incident in Vermont where petitioner had thrown two people off of a partially-built deck during a fight. Ultimately, the court concluded that it was not persuaded that probation was appropriate and declined to downwardly depart from the otherwise-applicable 70-month sentence:

> "I'm not impressed with the defendant's very late claims to have recognized and wanting to address the problems that are the root of his criminal involvement. I don't see him taking real responsibility for the extraordinary and virtually sociopathic outbursts that he has engaged in. Society deserves to know that when people act this way, they're going to be punished. And, you, [petitioner], deserve to know that when you or anyone else acts this way, they're going to be punished. This is not a case where I would remotely consider optional probation. This is a case where a Department of Corrections sentence is absolutely essential. It's a case where people of Oregon have reflected their own assessment of what the presumption ought to be and that's a 70-month sentence with the possibility of an exception only under substantial and compelling reasons. The reasons that have been offered, even if I were inclined to think that 37 to 38 months might be more appropriate, the reasons that have been offered today are not such that I would say sufficient substantial and compelling reasons to necessitate less than a 70-month sentence. I don't find mutual combat. I don't find mutual combat here. I don't find that there was mutual combat to any measure. I don't believe the belated and sort of fortuitously-timed claims of suddenly recognizing the root causes of problems. I hope that you carry that story with you and that you start to believe it because if you address it during your time in prison, then maybe you'll be in a position to have a productive life after you're out and you are a very young man. There's going to be a lot of time after you're out. If you've addressed your alcohol and anger issues, there's maybe problems even deeper than that because these crimes do appear to me to be close to sociopathic. I urge you to get whatever counseling is available to you.

> "I'm going to impose the Ballot Measure 11 presumptive 70-month sentence."

B.   *Post-Conviction Proceedings*

Petitioner then initiated the present post-conviction proceeding. He alleged, among other things, that trial counsel was inadequate, in violation of Article I, section 11, of the Oregon Constitution for failing to more fully develop the evidence of his military record in order to persuade the sentencing judge to downwardly depart from the presumptive 70 months under Measure 11. In support of that claim, petitioner introduced evidence that identified the nature of his military commendations, listed above.

Responding to that claim, trial counsel acknowledged that he did not inquire into petitioner's military background and was largely unfamiliar with the significance of petitioner's military commendations. He explained that he did not do so out of concerns that such a strategy could "backfire" because the court "could ask why petitioner had been unable, despite his experience as a soldier and the Army's emphasis on honor and dignity, to comport himself appropriately at the St. Paul Rodeo."

The post-conviction court denied relief, concluding that "Petitioner's attorney adopted a reasonable strategy but any chance for the strategy to succeed was lost when the Petitioner failed to take responsibility for his behavior and alcohol problem."

Petitioner appealed. On appeal he assigns error to the post-conviction court's denial of relief on, among others, his claim that trial counsel was inadequate and ineffective, in violation of the state and federal constitutions, for not further developing the record of his military service and arguing for a downward departure based on that service. The superintendent responds that the post-conviction court did not err, that trial counsel's decisions were reasonable tactical decisions, and that, in any event, petitioner failed to prove prejudice.

## II.   STANDARD OF REVIEW AND GENERAL LEGAL STANDARDS

We review a post-conviction court's grant or denial of relief for legal error, accepting the court's implicit and

explicit factual findings if there is evidence to support them. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). At issue in this matter are parallel claims of inadequate assistance of trial counsel under Article I, section 11, and ineffective assistance of trial counsel under the Sixth Amendment to the United States Constitution. To establish that his trial counsel rendered inadequate assistance for purposes of Article I, section 11, petitioner was required to prove two elements: (1) a performance element: trial counsel "failed to exercise reasonable professional skill and judgment"; and (2) a prejudice element: "petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). A functionally equivalent two-element standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment. *Id*. To prevail on that claim, petitioner was required to demonstrate that "trial counsel's performance 'fell below an objective standard of reasonableness'" and also that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 700 (quoting *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). We examine the challenged rulings of the post-conviction court in light of those standards.

## III.   ANALYSIS

The question before us is whether, in failing to investigate and present additional evidence of petitioner's military history in support of the case for downward departure, petitioner's trial counsel failed to exercise reasonable professional skill and judgment and, if so, whether that failure prejudiced petitioner. *See Richardson*, 362 Or at 255. We conclude that the answer to both questions is yes.

The Supreme Court's decision in *Richardson* supplies the framework for evaluating a "failure to investigate" claim like petitioner's. *Monfore v. Persson*, 296 Or App 625, 635, 439 P3d 519 (2019). There, as here, the issue was the constitutional adequacy of counsel's investigation to support his strategy choice at the petitioner's sentencing, at which the state would urge the court to sentence the petitioner as a dangerous offender. *Richardson*, 362 Or at 258. Trial

counsel in that case opted not to hire an expert to rebut testimony from the state's expert regarding the petitioner's supposed personality disorder, and the petitioner alleged that the decision was not grounded in a constitutionally adequate investigation of the facts—in particular, an investigation of the petitioner's own juvenile background. *Id*.

The Supreme Court agreed with the petitioner. Noting the "nature and complexity of the issues presented by the dangerous-offender hearing," the court explained that petitioner's trial counsel knew that the stakes were high because the petitioner could get a significantly longer sentence than he otherwise would have, that the jury would hear from the state's expert witness who would testify that the petitioner had an antisocial personality disorder, and that that witness's opinion would be based on an incomplete juvenile history of the petitioner. *Id*. at 257. Trial counsel also knew that the petitioner had had a rough childhood but nevertheless did not investigate the petitioner's school records. *Id*. at 258. Considering counsel's conduct, as informed by the nature of the case and counsel's knowledge at the time he made his decisions on how to proceed with the case, the court concluded that the failure to investigate the petitioner's records was not the product of reasonable professional skill and judgment. *Id*. Instead, under those circumstances, reasonable counsel would have familiarized himself with the petitioner's records and consulted with a defense expert to evaluate how best to address the testimony of the state's expert. *Id*. at 262.

The court then addressed how to ascertain prejudice in the context of a failure-to-investigate claim. It determined that "the assessment involves a sequential inquiry into whether 'there was more than a mere possibility' that an adequate investigation would have yielded information that could have been used at the sentencing hearing in a way that gave rise to 'more than a mere possibility' that the outcome of the proceeding could have been different as a result." *Monfore*, 296 Or App at 636 (quoting *Richardson*, 362 Or at 266-68 (internal quotation marks omitted)).

Applying that analysis to the facts of this case, we conclude that counsel's failure to investigate fully petitioner's

military history was not the product of reasonable professional skill and judgment. First, the stakes of the sentencing hearing were high. Petitioner faced a presumptive 70-month sentence for second-degree assault, which would end his promising career in the military. Second, counsel knew that petitioner's goal was to remain in the Army, so they adopted a strategy aimed at allowing petitioner to remain in the Army. Third, counsel's stated reason for limiting his investigation is inconsistent with the affirmative sentencing strategy that counsel chose. Counsel said that it was a tactical decision to limit his investigation and not develop evidence of petitioner's military service because such a strategy could have backfired if the court had asked "why petitioner had been unable, despite his experience as a soldier and the Army's emphasis on honor and dignity, to comport himself appropriately at the St. Paul Rodeo." But counsel's whole strategy at sentencing was to convince the court that petitioner should remain in the military, and the risk that the court would pose that question to petitioner would have been present with or without the evidence of petitioner's exceptional service. Beyond that, having affirmatively adopted the strategy of trying to convince the court to sentence petitioner such that he could remain in the military, counsel exercising reasonable professional skill and judgment would develop a command of his client's performance in the military. That is because the success of that strategy would necessarily depend on convincing the court that keeping the client in the military was a "substantial and compelling reason" to depart from the presumptive Measure 11 sentence. For those reasons, counsel's limited investigation into petitioner's military record, and, relatedly, counsel's failure to develop that evidence, cannot be said to be the product of reasonable professional skill and judgment.

That leaves the issue of whether petitioner was prejudiced. As noted, that requires a sequential inquiry into whether there is "more than a mere possibility" that a reasonable investigation would have yielded information that could have been used at sentencing in a way giving rise to "more than a mere possibility" that the outcome of the proceeding could have been different. *Monfore*, 296 Or App at 636. In assessing whether omitted information could

have affected the outcome of the proceeding, the Supreme Court has instructed that we must disregard the sentencing judge's "factual identity or personal characteristics." *Jackson v. Franke*, 364 Or 312, 326-27, 434 P3d 350 (2019). That is, "[a]s a matter of law, \* \* \* the prejudice analysis should not involve any consideration of the individual" judge or "the factors that might or might not have motivated" a specific judge to make a decision. *Id*. In other words, we are assessing whether the omitted information is the type that could have affected the outcome if presented to an objective, reasonable factfinder.

We conclude that that standard is met here. Had counsel fully investigated petitioner's military record, "there is more than a mere possibility" that that investigation would have yielded information that could have been used at petitioner's sentencing. Specifically, it would have yielded information that petitioner had served in Afghanistan and received the numerous commendations for his service identified above. That information certainly could have been used at sentencing to substantiate the case that petitioner's servicemember status was a substantial and compelling reason under OAR 213-008-0002(1)(a)(J) for downward departure authorized by ORS 137.712 (2015). And there is "more than a mere possibility" that that information could have affected the result of the proceeding. That is because it paints a fuller picture of both (1) the service that petitioner has provided to his country and (2) the success petitioner has had in the Army in conforming his conduct to societal expectations. Such an amplified picture of petitioner's service, particularly combined with the testimony of petitioner's sergeant about how the Army would help petitioner address his issues with alcohol and anger that contributed to his crime, could have caused the sentencing court to conclude that a downward departure from the presumptive 70-month sentence was a preferable and appropriate way to address petitioner's criminal conduct in view of his service to the country and the resources available in the military.

For the foregoing reasons, trial counsel was inadequate and ineffective for failing to investigate fully petitioner's military history and present that evidence to the sentencing court. We therefore reverse and remand with

directions to grant relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present evidence of petitioner's military service.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present evidence of petitioner's military service; otherwise affirmed.