No. 183          March 27, 2024          561

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CYNTHIA ANN GWYNNE,
*Petitioner-Appellant,*

*v.*

Paula MYERS,
Superintendent,
Coffee Creek Correctional Institution,
*Defendant-Respondent.*

Washington County Circuit Court
19CV14026; A175324

Patricia A. Sullivan, Senior Judge.

Argued and submitted January 11, 2023.

Jason Weber argued the cause for appellant. Also on the brief was O'Connor Weber LLC.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Chief Judge, and Powers, Judge.

LAGESEN, C. J.

Reversed and remanded.

## LAGESEN, C. J.

Petitioner appeals a judgment denying her petition for post-conviction relief. She assigns error to the post-conviction court's denial of relief on her claim that her probation-revocation counsel provided inadequate and ineffective assistance of counsel, in violation of Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. *See, e.g.*, *Lujan v. Myrick*, 288 Or App 763, 407 P3d 966 (2017) (granting post-conviction relief based on inadequate assistance of probation-revocation counsel). Petitioner's probation was revoked for contacting her husband by email in violation of the terms of probation, and she was sentenced to 20 months in prison as a result. Petitioner contends that her probation-revocation counsel performed inadequately by not pointing out to the trial court that petitioner had only contacted her husband once, after the trial court indicated a mistaken belief that petitioner had contacted her husband multiple times. The post-conviction court denied relief, concluding that petitioner had not demonstrated that she was prejudiced by any inadequacy in counsel's performance. We reverse and remand because, in denying relief, the post-conviction court applied an incorrect legal standard in assessing prejudice and because, under the correct legal standard, petitioner will be entitled to relief, if the post-conviction court were to resolve yet-to-be-addressed factual issues in petitioner's favor.[1]

---

[1] Petitioner has completed her probation revocation sentence, and defendant, the superintendent of the Coffee Creek Correctional Institution, moved to dismiss this case as moot. In response, petitioner pointed out that, among other things, under established Oregon law, she must obtain "exoneration" from the probation-revocation judgment as a prerequisite to pursuing her malpractice claim. *Stevens v. Bispham*, 316 Or 221, 239, 851 P2d 556 (1993) (malpractice claim against criminal defense lawyer does not accrue until the plaintiff is "exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise"); *Johnson v. Babcock*, 206 Or App 217, 224, 136 P3d 77, *rev den*, 341 Or 450 (2006) (holding that a plaintiff could pursue a legal malpractice claim based on counsel's negligence at sentencing, when negligence results in the plaintiff "serv[ing] more of the sentence than was legally permissible" and the plaintiff "obtain[s] post-judgment relief from the sentence"). In view of the effect a grant of relief would have on petitioner's ability to pursue a malpractice claim under established Oregon law, the court denied the motion to dismiss on the ground that the superintendent had not met her burden of demonstrating mootness. *See State v. K. J. B.*, 362 Or 777, 785-86, 416 P3d 291 (2018) (explaining the burden placed on the proponent of a motion to dismiss an appeal on mootness grounds); *see also Dept. of Human Services v. T. J. N.*, 371 Or 650, 656-58, 540 P3d 540 (2023) (same).

We review the post-conviction court's judgment for legal error and accept the court's supported implicit and explicit factual findings. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015).

Petitioner pleaded guilty to one count of first-degree criminal mistreatment and two counts of fourth-degree assault. She was sentenced to probation, a downward departure sentence. Petitioner was pregnant at the time, and the objective of the court and the parties was to allow for petitioner to be out of custody when she had her baby. As a condition of probation, petitioner was prohibited from having contact with her husband, Carl (who was in jail), outside of court proceedings. The prohibition on contact included contact through third parties.

Not long after petitioner was sentenced, Carl began corresponding by email with an account bearing the name of his brother, Shanon. At one point, Shanon, who lives in Australia, passed on a message that is undisputedly from petitioner:

> "I saw you today Nov 6th please eat and drink lots of water, I have been staying with really nice people that own and run a church [and] are letting me stay in a section of the[i]r house[.] I have a really nice room, and I bought a car se[at] and baby seat and more baby stuff. I found 300 $ on the beach someone left in the sand I felt like I was rich[.] [K] is getting really big he kicks my stomach and makes me choke on my stomach juices. I have a sinus infection and stomach acid and taking medicine for it[.] I want you to know I will be on I will always be love you forever!! I will fight for you forever[.]"

The balance of the emails do not, on their face, appear to involve communications from petitioner, and petitioner denies that any of the other messages contained in that correspondence were from her.

The jail notified petitioner's probation officer that petitioner had contacted Carl through the jail's email system. Based on that violation of the terms of her probation—and one other alleged violation—the probation officer recommended a 15-day jail sanction. The state nonetheless moved to revoke petitioner's probation.

At the hearing on the alleged probation violations, the state introduced the email correspondence that included the message from petitioner to her husband, and petitioner admitted that she had contacted her husband. Based on that email correspondence, the court revoked petitioner's probation; the court found that petitioner had not violated the terms of probation in the other manner alleged. In concluding that revocation was appropriate, the court determined that petitioner was responsible for all the email communications between Carl and Shanon, apparently believing that petitioner was using Shanon's name to communicate with Carl: "And it wasn't *** isolated. We're not talking about one email. The content of these emails is abundantly clear. This isn't Shanon. This is you. And you admitted that." Petitioner's probation-revocation counsel did not intervene to clarify that petitioner had only admitted to sending one of the messages, argue to the court that the balance of the emails were not attributable to petitioner, or point out to the court that attributing the additional emails to petitioner would require findings of fact beyond the scope of petitioner's admission.

Petitioner subsequently petitioned for post-conviction relief. She asserts that her probation-revocation counsel was inadequate and ineffective, in violation of the state and federal constitutions, for failing to present "mitigation" evidence at the revocation hearing, namely, for failing to alert the trial court that she admitted to sending only one of the messages. In response, the superintendent did not dispute petitioner's claim that she had sent only a single message or argue that counsel's performance had met constitutional standards. Instead, the superintendent argued that petitioner had not demonstrated that she was prejudiced by her probation-revocation counsel's failure to bring that fact to the trial court's attention. The superintendent's theory was that, regardless of the fact that petitioner might have sent only one message, petitioner's single contact with her husband, standing alone, was sufficient to permit revocation. That is, the superintendent argued that the trial court would have revoked petitioner's probation even if it had understood that petitioner had sent only one message. The superintendent argued further that, even if petitioner's probation would not have been revoked for a single message,

petitioner was unlikely to comply with the terms of her probation, so it would have been revoked eventually anyway. The post-conviction court agreed with that theory and ruled that petitioner had not demonstrated prejudice for the reasons argued by the superintendent:

> "Petitioner has failed to show that any additional 'mitigation' evidence would have changed the outcome of the probation violation hearing. The Trial Judge made this abundantly clear. Petitioner has not shown prejudice. Petitioner is simply unwilling to avoid contact with her husband, even if it results in imprisonment or loss of her children, making revocation inevitable."

Petitioner appealed, assigning error to the post-conviction court's denial of relief on her claim challenging her probation-revocation counsel's performance.

We review a post-conviction court's grant or denial of relief for legal error, accepting the court's implicit and explicit factual findings if there is evidence to support them. *Green*, 357 Or at 312. As noted, petitioner asserts parallel claims of inadequate assistance of probation-revocation counsel under Article I, section 11, and ineffective assistance of probation-revocation counsel under the Sixth Amendment. To establish that her counsel rendered inadequate assistance under the state constitution, petitioner must prove two elements: (1) a performance element, that trial counsel "failed to exercise reasonable professional skill and judgment"; and (2) a prejudice element, that "petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). A functionally equivalent two-element standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment. *Id*. To prevail on that claim, petitioner must demonstrate that "trial counsel's performance 'fell below an objective standard of reasonableness'" and also that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 699-700 (quoting *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)).

In this instance, the post-conviction court denied relief based on its conclusion that petitioner had not

demonstrated prejudice.[2] As noted, it did so based on its determinations that (1) petitioner did not demonstrate that the outcome of the revocation hearing "would have changed" if counsel had pointed out to the court that petitioner sent only one message; and (2) that, in all events, it was inevitable that petitioner would keep violating the terms of her probation and have it revoked. Those determinations reflect that the post-conviction court applied a legal standard for assessing prejudice that was erroneous in three respects.

First, the post-conviction court's standard required petitioner to show that the outcome of the probation-revocation hearing *would* have changed: "Petitioner has failed to show that any additional 'mitigation' evidence *would* have changed the outcome of the probation violation hearing." (Emphasis added.) But, to establish prejudice for purposes of Article I, section 11, and the federal constitution, a post-conviction petitioner need only show that counsel's (alleged) deficiency "could have tended to affect the outcome of the case." *Green*, 357 Or at 323 (internal quotation marks and emphasis omitted). That standard is met if there is "'more than a mere possibility'" that the outcome of the proceeding could have been different if counsel's performance was not deficient. *Pike v. Cain*, 303 Or App 624, 634, 465 P3d 277, *rev den*, 367 Or 75 (2020) (quoting *Monfore v. Persson*, 296 Or App 625, 636, 439 P3d 519 (2019)); *Richardson v. Belleque*, 362 Or 236, 263-68, 406 P3d 1074 (2017) (explaining that the prejudice standard in this context is the same under both the state and federal constitutions). A post-conviction petitioner need not show, as the post-conviction court concluded, that, absent counsel's deficient performance, the outcome of the proceeding *would* have been different.

---

[2] The post-conviction court's judgment does not specifically address the performance element of petitioner's claim but does state that "[w]ith regard to any issues not specifically addressed above, the Court relies on and adopts the facts and law in Defendant's trial memorandum as the Court's findings of fact and conclusions of law." The superintendent's trial memorandum did not specifically address the performance element either, arguing instead that petitioner could not show that a correct understanding of the extent of petitioner's correspondence with her husband "would" have changed the court's mind. For that reason, we do not understand the post-conviction court to have ruled on the performance element of petitioner's claim.

Second, the post-conviction court's standard incorrectly focused on whether the *particular* judge handling petitioner's case would have made a different decision, had counsel explained that petitioner had only sent a single email: "Petitioner has failed to show that any additional 'mitigation' evidence would have changed the outcome of the probation violation hearing. *The Trial Judge* made this abundantly clear." (Emphasis added.) Contrary to that approach, the prejudice standard is objective and does not take into account the identity of the decisionmaker or how particular factors may or may not have influenced that particular person's decision. *Pike*, 303 Or App at 636; *see also Bacon v. Cain*, 327 Or App 673, 678, 536 P3d 634 (2023) ("The [post-conviction] court's focus on the impact of the omitted evidence on the particular sentencing judge rather than on an objective factfinder was in error."). The question is "whether the omitted information is the type that could have affected the outcome if presented to an objective, reasonable factfinder." *Pike*, 303 Or App at 636.

Third, the post-conviction court also determined that petitioner did not demonstrate prejudice because, in its view, revocation of petitioner's probation was inevitable, even if the trial court would not have revoked petitioner's probation based on her email to her husband, had the court understood that petitioner had only sent one. But, as explained above, the prejudice standard requires an analysis of how deficiencies in a lawyer's performance could have affected the decision in the particular proceeding; in this case, the probation-revocation proceeding. *Green*, 357 Or at 323 (internal quotation marks and emphasis omitted). If counsel performed deficiently and the deficiency had "more than a mere possibility" of affecting the outcome of the probation-revocation proceeding, then petitioner was entitled to relief on her claim. *Id.* at 322-23 (reversing denial of post-conviction relief because the post-conviction court "applied the wrong legal standard for prejudice"). The prejudice standard does not require a petitioner to show, in addition, that the petitioner will never again violate the terms of probation or be subject to future probation-revocation proceedings.

We therefore reverse and remand for the post-conviction court to consider petitioner's claim under the correct legal standard. On this record, there are factual disputes regarding the extent of petitioner's role in the email correspondence to her husband that the post-conviction court did not need to reach in light of its erroneous application of the prejudice standard.[3] Although petitioner would be entitled to relief if all factual disputes were resolved in her favor, the resolution of those factual issues is for the post-conviction court in the first instance. *See Green*, 307 Or at 323 ("Because the post-conviction court appears to have applied the wrong legal standard for prejudice, it is inappropriate to affirm the post-conviction court's judgment on prejudice grounds on the record before us.").

Reversed and remanded.

---

[3] Petitioner submitted a declaration denying sending any of the communications beyond the one she admitted to sending. In his deposition, petitioner's probation-revocation counsel testified that petitioner "admitted to me that she was receiving and sending the e-mails from the jail to Carl Gwynne." The post-conviction court did not resolve that apparent factual dispute.