Argued and submitted September 29, 2021; reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present mitigation evidence, otherwise affirmed October 19, 2022

BRANDON MAXFIELD,
*Petitioner-Appellant,*

*v.*

Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
12129824P; A172028

520 P3d 890

Petitioner appeals from a judgment denying him post-conviction relief (PCR). He argues that the PCR court erred in finding that he was not prejudiced by his trial counsel's failure to investigate mitigating evidence for sentencing. In particular, petitioner contends that available mitigating evidence created "more than a mere possibility" that the sentencing court would have decided not to impose a separate consecutive sentence for each of the six victims. *Held*: The Court of Appeals determined that, when the claim involves a failure to investigate mitigating evidence, the first step is to identify the precise question before the sentencing court and the legal standard applicable to that question. The second step is to apply the "more than a mere possibility, but less than a probability" framework to the legal question before the sentencing court. After weighing the mitigating evidence against the aggravating evidence, the court determined that the uninvestigated evidence regarding petitioner's neurological capabilities created more than a mere possibility that the sentencing court would have decided to impose one of the six sentences concurrently.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present mitigation evidence; otherwise affirmed.

J. Burdette Pratt, Senior Judge.

Ryan T. O'Connor argued the cause for appellant. Also on the brief was O'Connor Weber LLC.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present mitigation evidence; otherwise affirmed.

**KAMINS, J.**

This is the third time this case is before us after we twice previously reversed and remanded the judgment denying petitioner post-conviction relief (PCR). *Maxfield v. Nooth*, 278 Or App 684, 377 P3d 650 (2016) (*Maxfield I*); *Maxfield v. Cain*, 295 Or App 553, 435 P3d 779 (2019) (*Maxfield II*). In this appeal, petitioner argues that the PCR court erred in finding that he was not prejudiced by his trial counsel's deficient performance at sentencing. We conclude that petitioner has established prejudice and is entitled to a new sentencing hearing. We therefore reverse and remand with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate and ineffective for failing to investigate and develop mitigating evidence for sentencing.

Petitioner was found guilty following a bench trial of three counts of robbery in the first degree and six counts of robbery in the second degree, based on petitioner robbing five different retail stores during a one-month period when he was 22 years old. At sentencing, the trial court imposed six sentences (one for each of the six victims), five to run consecutively, for a total of 40 years (480 months) in prison pursuant to Ballot Measure 11's mandatory minimum. ORS 137.700(2)(R), (S).[1]

Petitioner initiated post-conviction proceedings, claiming that trial counsel was ineffective during sentencing. Specifically, "[t]rial counsel failed to conduct an adequate and effective investigation into the petitioner's background" for the purpose of presenting mitigating evidence at sentencing.[2] In support, petitioner introduced affidavits

---

[1] Although petitioner was sentenced under a previous version of the statute, the amendments changed only the lettering of the subsections for petitioner's offenses, and so we cite the current version of the statute. ORS 137.700 (2009), *amended by* Or Laws 2019, ch 635, § 10.

[2] Throughout the various proceedings, petitioner's claim has at times been referred to as a failure to present mitigation evidence. However, the claim for relief before us, as contained in the petition, is that trial counsel failed to conduct an adequate investigation for purposes of "identify[ing] those aspects of the petitioner's background that would most favorably impact the trial court's sentencing decision." *See Hale v. Belleque*, 255 Or App 653, 660, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013) (the allegations of the petition frame the issues that a PCR court can consider).

from friends and family members, and presented live testimony from a legal expert and a neuropsychological expert.[3] The affidavits outlined petitioner's difficult childhood, which included many failures by the adults around him and drug use from an early age. The neuropsychological expert presented evidence regarding petitioner's neurological difficulties and their potential causes.

The original PCR court determined that counsel's failure to offer any mitigation evidence in light of the sentence his client was facing was deficient, but that petitioner had not demonstrated prejudice. On appeal, we reversed the judgment, determining that the court had applied an incorrect legal standard to the prejudice analysis. *Maxfield I*, 278 Or App at 689 (determining that the PCR court erred when it required petitioner to prove that it was more likely than not that he would have received a different sentence). On remand, the PCR court changed its original ruling and determined that trial counsel's performance was not actually deficient and denied relief to petitioner on that alternative basis. We reversed again, concluding that the court had exceeded the scope of remand. *Maxfield II*, 295 Or App at 556. After the second remand, the PCR court again determined that, despite counsel's deficiency, petitioner failed to demonstrate prejudice, and petitioner now appeals.

Focusing its finding on the original sentencing judge's rationale, the PCR court concluded that the additional evidence would not have made a difference at sentencing. As to the affidavits of petitioner's friends and family, the PCR court concluded that those would have had little impact because much of the information was in fact more aggravating than mitigating, and that some of the information was already known to the sentencing court. The PCR court discounted the import of the neuropsychological expert's conclusion that petitioner was impulsive because the court found that that conclusion was undermined by the degree of planning involved in petitioner's crimes. The court further reasoned that the expert's testimony that petitioner's issues were "hard wired" and difficult to treat could have

___

[3] In this appeal, petitioner does not rely on the testimony of the legal expert in support of his claim, and so we do not address it in this opinion.

been perceived as aggravating rather than humanizing. The PCR court determined that petitioner's written statement was both not credible and also more harmful than mitigating.

On appeal, the parties dispute whether the mitigating evidence petitioner presented is enough to establish prejudice; that is, whether the evidence raises "more than a mere possibility, but less than a probability" that, had trial counsel properly investigated potential mitigating evidence, the sentence would have been different. *Maxfield I*, 278 Or App at 688. Petitioner argues that the evidence was sufficient to demonstrate prejudice and emphasizes that the sentencing court had discretion as to whether it ran the Measure 11 sentences consecutively or concurrently, making it more likely that the mitigation evidence could have tended to affect the sentence. The superintendent responds that much of the new mitigating evidence was actually "a two-edged sword," if not strictly aggravating, and therefore contends that it is unlikely the evidence would have resulted in a shorter sentence.

We review PCR proceedings for errors of law. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). Findings of historical fact are binding on this court if there is evidence in the record to support them. *Id.* If the PCR court failed to make findings of fact on all of the issues—and there is evidence from which such facts could be decided more than one way—we will presume the facts were decided consistently with the PCR court's conclusions of law. *Id.*

As an initial matter, we observe that, because the prejudice analysis "should not involve any consideration of the individual judge or the factors that might or might not have motivated a specific judge to make a decision," the PCR court erred in focusing the inquiry on what would have impacted that particular sentencing judge. *Pike v. Cain*, 303 Or App 624, 636, 465 P3d 277, *rev den*, 367 Or 75 (2020) (internal quotation marks omitted).

In assessing whether counsel's deficient performance caused prejudice under Article I, section 11, of the Oregon Constitution, we must determine that there is more than a mere possibility, but not necessarily a probability, that

counsel's deficient performance affected the outcome. *Maxfield I*, 278 Or App at 688. Prejudice under the federal constitution is established if the petitioner shows there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *Hale v. Belleque*, 255 Or App 653, 660, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013). That is established if the probability is sufficient to undermine confidence in the outcome. *Porter v. McCollum*, 558 US 30, 44, 130 S Ct 447, 175 L Ed 2d 398 (2009). The state and federal standards for determining the adequacy of legal counsel are functionally equivalent. *See, e.g.*, *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (so acknowledging); *Pike*, 303 Or App at 633 ("A functionally equivalent two-element standard governs petitioner's claim of ineffective assistance of counsel under the Sixth Amendment.").

When the claim involves a failure to investigate mitigating evidence at sentencing, we evaluate whether there was "more than a mere possibility that an adequate investigation would have yielded information that could have been used at the sentencing hearing in a way that gave rise to more than a mere possibility that the outcome of the proceeding could have been different as a result." *Monfore v. Persson*, 296 Or App 625, 636, 439 P3d 519 (2019) (citing *Richardson v. Belleque*, 362 Or 236, 266-68, 406 P3d 1074 (2017) (internal quotation marks omitted)).

The "more than a mere possibility, but less than a probability" standard can be difficult to apply in the context of mitigating evidence, so it is helpful to outline a methodology for its application. The first step is to determine the precise question before the sentencing court and the legal standard applicable to that question. *See Strickland v. Washington*, 466 US 668, 695, 104 S Ct 2052, 80 L Ed 2d 674 (1984) ("The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors."); *Snyder v. Amsberry*, 306 Or App 439, 449-50, 474 P3d 417 (2020) (analyzing the prejudicial impact of counsel's deficient performance based on the context of the legal proceeding at issue).

The second step is to apply the "more than a mere possibility, but less than a probability" framework to the legal question before the sentencing court. To aid in our inquiry, and because the state and federal standards for ineffective assistance of counsel are "functionally equivalent," we turn to federal jurisprudence for guidance. *Montez*, 355 Or at 6-7. To assess prejudice in sentencing, federal courts "must consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." *Andrus v. Texas*, ___ US ___, 140 S Ct 1875, 1886, 207 L Ed 2d 335 (2020) (internal quotation marks and brackets omitted); *see also Sears v. Upton*, 561 US 945, 956, 130 S Ct 3259, 177 L Ed 2d 1025 (2010) ("A proper analysis of prejudice under *Strickland* would have taken into account the newly uncovered evidence \*\*\* along with the mitigation evidence introduced during [petitioner's] penalty phase trial, to assess whether there is a reasonable probability that [petitioner] would have received a different sentence after a constitutionally sufficient mitigation investigation.").

In sum, we look at the totality of the mitigation evidence and reweigh it against the evidence of aggravation in order to determine, in answering the specific legal question before the sentencing court, whether there was "more than a mere possibility that competent defense counsel could have used the information \*\*\* in ways that could have tended to affect the outcome." *Richardson*, 362 Or at 266 (internal quotation marks omitted).

Here, petitioner is challenging the outcome of the penalty phase of his trial, where the sentencing court had two decisions to make: whether to impose the mandatory sentences required by Measure 11, ORS 137.700(2)(R) and (S), and whether those sentences should run concurrently or consecutively. Under Measure 11, the sentencing court may only impose a lesser sentence in certain circumstances, such as if the sentence is disproportionate under the Oregon Constitution, or if the offense qualifies for a downward departure. *See State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009) (analyzing a Measure 11 sentence

to determine whether the sentence was "so disproportionately severe" that it requires reversal under Article I, section 16); ORS 137.712 (certain offenses, including robbery in the second degree with some exceptions, are eligible for a downward departure if the court finds substantial and compelling reasons to do so). A sentence is disproportionate if it would "shock the moral sense of reasonable people." *Rodriguez/Buck*, 347 Or at 58 (internal quotation marks omitted). Applying the framework above, we would weigh all the mitigating evidence, including the newly presented evidence and what was presented at trial, against all aggravating evidence to determine whether the new evidence raised more than a mere possibility that it would have impacted the factors considered in the Measure 11 proportionality inquiry: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id*. As petitioner does not argue that the unpresented mitigation evidence could have impacted the sentencing court's analysis of proportionality or would have justified a downward departure, we do not address those components of the sentencing court's decision.

Accordingly, we focus our analysis on the other decision before the sentencing court—whether to impose consecutive sentences. The rules governing the court's authority in consecutive sentencing are contained in ORS 137.123 and are also limited by the concept of merger as provided by ORS 161.067. As concerns this case, those statutes provide authority to impose separate consecutive sentences when there are separate criminal episodes and when there are separate victims. ORS 137.123(2), (5)(b); ORS 161.067(2). If consecutive sentences are authorized by statute, the decision of whether to impose consecutive or concurrent sentences is ultimately one of discretion. *See State v. Gleason*, 141 Or App 485, 493, 919 P2d 1184, *rev den*, 324 Or 323 (1996) (reviewing trial court's imposition of consecutive sentences for an abuse of discretion); *State v. Febuary*, 361 Or 544, 561, 396 P3d 894 (2017) ("A judge has discretion to set the length of a sentence within statutory and constitutional parameters."); Arthur W. Campbell, *Law of Sentencing* § 9:22 (3d ed 2004) ("[P]roviding that no constitutional or statutory condition

is violated, the final test for upholding the selection of a concurrent or consecutive sentence is whether the discretion was abused." (Internal quotation marks and brackets omitted.)).

Petitioner does not contend that the mitigating evidence presented to the PCR court would have undermined the legal authority for the sentencing court's imposition of consecutive sentences. Rather, the question is whether the omitted mitigating evidence creates more than a mere possibility that an "objective, reasonable factfinder" would have chosen to exercise its discretion not to impose all the sentences for separate victims consecutively. *Pike*, 303 Or App at 636.

Aside from the authority granted in ORS 137.123, there is little to guide or limit the sentencing court's discretion in the decision to impose consecutive sentences. *See, e.g.*, Or Const, Art I, § 44(1)(b) ("No law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims."); OAR 213-012-0020(5) (certain limitations on consecutive sentences shall not apply "to consecutive sentences imposed for crimes that have different victims"); ORS 137.123(5)(b) (allowing imposition of consecutive sentences for convictions arising out of a continuous and uninterrupted course of conduct if the criminal offenses relate to different victims). Under the Model Penal Code, "a reasonable limit" should be set on the extent to which multiple sentences can be accumulated. American Law Institute, Model Penal Code and Commentaries, § 7.06, explanatory note at 270 (1985). The American Bar Association recommends that a sentencing court should not impose consecutive sentences that exceed "a total term reasonably related to the gravity of the offenses." American Bar Association's *Standards for Criminal Justice: Sentencing* (1994) (ABA Standards), Standard 18-6.5(f). The Oregon Supreme Court has explained in the context of proportionality challenges that "the gravity of an offense refers to the gravity of the defendant's particular conduct and the statutorily defined crime itself. To the extent that an offender's personal characteristics influence his or her conduct, those characteristics can affect the gravity of the offense." *State v.*

*Ryan*, 361 Or 602, 616, 396 P3d 867 (2017) (internal quotation marks omitted).

Without more to guide the court's exercise of discretion in imposing consecutive or concurrent sentences, we are left to balance the mitigating evidence, including the new evidence petitioner contends that counsel should have investigated, against the aggravating evidence, and evaluate its impact on the sentencing court's discretion.

At petitioner's original sentencing hearing, the evidence presented by defense counsel consisted of testimony from petitioner and his parents. Petitioner's mother gave a short statement asking the court not to imprison her son for the rest of his life and attributing his behavior to addiction. His father gave a statement ascribing his son's behavior to bad friendships and drug addiction and asking the court to show leniency. Petitioner apologized to the victims and spoke about working on himself so that he could give back to the community and make up for his wrongdoings.

At the post-conviction trial, petitioner presented significantly more mitigating evidence relating to petitioner's difficult childhood and its impact on his neurological capabilities.[4] According to that evidence, petitioner was born prematurely after a drug-affected pregnancy. He was born with some mild "physical deformities," leading to difficulty assimilating socially and to a history of speech problems. Both of petitioner's parents were arrested at different times, and petitioner's father was abusing drugs or in prison for large portions of his childhood. In this environment, petitioner began using drugs in elementary school, later encouraged by some of the adults in his life. When he was 17, petitioner admitted to attempting suicide four different times.

A neuropsychologist testified that, although functioning in the low average range of intellectual abilities, petitioner has extraordinary difficulties staying focused. According to the expert, petitioner's extremely early use of serious drugs likely changed the neurological development of his brain. That, combined with the impact of drug use

---

[4] Because the PCR court found portions of petitioner's letter not to be credible, we do not rely on its contents.

in-utero and petitioner's difficult childhood, placed him at a significantly higher risk of learning and mood disorders, made it difficult for him to exercise control over his behavior, exacerbated his difficulties socially and academically, and created the need for a long-term residential treatment program.

The aggravating evidence against petitioner was also substantial. Petitioner committed five different armed robberies over the course of a one-month period. As a juvenile he had previously been placed on probation for several offenses, the most serious being assault in the fourth degree, and he had committed eight probation violations. Attempts to place petitioner in residential substance abuse treatment were unsuccessful, although petitioner claims that his mother thwarted those efforts. Finally, petitioner's crimes impacted six different victims. Two victim impact statements were read at sentencing describing the significant and long-term fear those victims continued to experience.

The fact that petitioner's crimes involved so many different victims would weigh heavily in aggravation. However, when balanced against the new mitigating evidence, and in particular, the neuropsychologist's testimony regarding petitioner's cognitive abilities and culpability, a sentencing court could have evaluated the gravity of petitioner's offenses differently and imposed one or more of the six sentences concurrently. Specifically, petitioner's neurological issues could have been used by competent counsel to argue that petitioner had diminished mental capacity, a recognized mitigating factor for sentencing. OAR 213-008-0002(1)(a)(C). Additionally, the neuropsychologist testified that petitioner's exposure to methamphetamine in-utero and drug use as a child would have made it harder for him to regulate his behavior, which could have been used by defense counsel to argue that petitioner was less culpable for his actions, lessening the gravity of his offenses. *See Williams v. Taylor*, 529 US 362, 398, 120 S Ct 1495, 146 L Ed 2d 389 (2000) (unpresented evidence of petitioner's mental difficulties could have demonstrated to the jury that the violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation); ABA Standard 18-6.5(f) (consecutive sentences should not exceed a total

term reasonably related to the gravity of the offenses). And finally, competent counsel could have used the information about petitioner's mental impairments to contextualize petitioner's problems in the juvenile system, which was an aggravating fact emphasized by the state at the original sentencing hearing. *Cf. Eddings v. Oklahoma*, 455 US 104, 116, 102 S Ct 869, 71 L Ed 2d 1 (1982) (recognizing that "just as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in sentencing").

The original sentencing court heard nothing about petitioner's childhood difficulties and the impact of his early drug exposure on his mental health and behavioral regulation. That unpresented mitigation information, combined with petitioner's youth and relatively minimal criminal history up until his month-long spree of robberies, when weighed against the aggravating circumstances in this case—petitioner's five armed robberies where nobody was ultimately physically injured and petitioner's poor record in the juvenile system—creates more than a mere possibility that counsel's deficient performance affected the outcome.

Reversed and remanded with instructions to grant post-conviction relief on petitioner's claim that trial counsel was inadequate under Article I, section 11, for failing to adequately investigate and present mitigation evidence; otherwise affirmed.